## THATCHER & CO. v. MASSEY.

1. Where a party owes more than one debt to the same person and makes a payment, the *onus* is on the debtor to prove that he directed its application. This court concurs with the court below that no such application had been directed in this case.

2. It having been ascertained, in action by assignee to foreclose a mortgage, that a payment made by the debtor to the assignor was not applicable to the mortgage debt, it is unnecessary to determine to which

one of other claims held by the assignor (not a party to the action) the payment should be applied.

Before KERSHAW, J., Lancaster, September, 1885.

Upon the points decided by this court, the opinion fully states the case.

*Mr. Ernest Moore*, for appellant.

*Messrs. R. E. & R. B. Allison*, contra.

February 24, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This case has been in this court once before (see 20 *S. C.*, 542), to which reference is made for a full statement of all the facts.

It appears that James R. Massey was a farmer of Lancaster County of this State, and that J. Y. Bryce & Co., of Charlotte, North Carolina, made agricultural advances to him for a series of years. At the end of the year 1869, Massey was in advance to them in the small sum of $37.92. Bryce & Co. agreed to make further advances for the year 1870, to the extent of $2,000; and in May of that year, the sum of $1,455.40 having been already received, Massey gave to Bryce & Co. an instrument under seal, by which he promised to pay them the money already advanced as above stated, and on the same day he executed a mortgage of lands in Lancaster County, and an agricultural lien upon the crop of that year, to secure the $2,000 agreed to be advanced, including the $1,455.40 already received. Shortly after these papers were executed, Bryce & Co. assigned and delivered them to the plaintiffs, Thatcher & Co., but of this transfer Massey had no knowledge until this suit was brought to foreclose the mortgage in November, 1873. Massey resisted foreclosure, and insisted that he had paid the mortgage in full, and that the complaint should be dismissed. There was much controversy as to the payments, and as to how they should be applied. It appeared that in 1870 Bryce & Co. advanced some four or five hundred dollars in excess of the $2,000 agreed upon and secured as before stated,

and in 1873 made some further advances; that Massey several times delivered to them cotton, and in the spring of 1871 he sold to them three mules at the price of $600. The main question in the case was whether the price of the mules should be applied as a payment upon the mortgage debt, or to the other debt for advances over the $2,000 which was not secured, or to other separate debts of Massey to Bryce & Co.

Finally, the case, as before stated, reached this court, which pronounced a full judgment upon all the points, closing as follows: "In our opinion, the payments, other than the value of the mules, should first be applied to the $2,000 debt, the proceeds of the cotton at the date of the sales. This will leave a small balance due on this debt, and whether any portion of the value of the mules shall be made to this balance, or whether the whole of that credit shall go to excess of the advances of 1870, over the secured $2,000 debt, or to other indebtedness due at the time the mules were received, must be left to the discretion of Bryce & Co. to exercise before judgment, in the absence of any application by Massey at the time he sold said mules, which facts can only be determined, perhaps, by another reference. It is the judgment of this court, that the judgment of the Circuit Court be modified so as to leave the question as to the application of the value of the mules open, to be determined according to the principles hereinabove, and that in all other respects it be affirmed. Let the case be remanded to the Circuit Court," &c.

Accordingly, the case went back to the Circuit Court, and it was referred to B. J. Witherspoon, Esq., the referee, to take and report the testimony as to "the matter left open by the Supreme Court." He did take the testimony as directed, and at the reference the defendant, Massey, moved to amend his testimony as reported in a reference before the first appeal to this court, alleging and offering affidavits of the fact, that what he said on that occasion had been imperfectly reported, in this, that he said, in response to interrogations regularly propounded, that at the time of the sale of the mules he directed that their price, $600, should be applied to the debt now sued on, viz., the mortgage debt. The referee, taking the view that the point was not before him, and that the motion to amend came too late, refused it. But, at

the same time, he took down the testimony and reported it to the court, appending to it a full statement as to how the accounts would stand, disallowing the $600 as a credit upon the mortgage debt.

The case again came up on exceptions to this report before Judge Kershaw, who, taking the most favorable view for the defendant, considered that the whole question as to the application of the $600 was "open," including not only the inquiry as to the election of Bryce & Co., but also whether the defendant, at the time of the sale of the mules, directed the proceeds of sale to be applied to the mortgage debt. So considering, he proceeded to determine the question. There was direct conflict in the testimony as to whether the defendant at the time of the sale directed the application of the proceeds, but the judge found as matter of fact that Massey did not direct the application of the proceeds to the mortgage debt, and as matter of law that he was not entitled to have the proceeds so applied. Bryce & Co. elected that the application should be made to a separate and distinct debt, which they claimed to hold against Massey, growing out of some farming operations with C. B. Jones on the Landsford plantation, and, therefore, called the "Landsford debt." But the judge held that this application could not be allowed for two reasons, first, that it was a security debt, and, second, it was barred by the statute of limitations; and he directed the application to the advances made directly to Massey which were unsecured. From this decree the defendant appeals to this court upon numerous and long exceptions, covering the whole controversy. They are all in the "Brief," and need not be restated here.

It is very important for the interests of the country that there should be an end of litigation. We cannot open up all the points of controversy in this case, but must regard every question in it as conclusively settled by the former judgment of this court, except the matter as to the application of the value of the mules "left open." That was necessarily confined within very narrow limits, and could only involve two issues of fact: first, did Massey, at the time of the sale of the mules, direct the application of the proceeds of the sale of the mules to the mortgage debt? and if not, second, did Bryce & Co. make that application of them?

As to the first point, there was great conflict in the testimony. The decree states that, "The defendant says now that he did direct the credit to be applied to the secured debt at the time. * * * Mr. Bryce, on the other hand, is positive that no application of the credit was directed by the defendant, although he says that C. B. Jones wrote him that the mules should go to the credit of the Landsford place. He also says that he did not know how it was to be applied; that he was to give credit on final settlement," &c. In this state of the case, after full and careful consideration of all the facts and circumstances, the judge held as matter of fact that Massey did not at the time of the sale direct the application of the purchase money. It is well known to be the settled practice of this court not to disturb the finding of the court below unless it is manifestly against the weight of the evidence. The *onus* of proof was on the defendant, and we cannot say that the weight of the evidence was against this finding.

There is no doubt that Bryce & Co., besides the mortgage debt, had several other demands against Massey, amounting to a sum at least equal to the value of the mules; and wishing to apply the price of the mules to some of these other claims, they certainly did object to make the application to the mortgage debt. That is all that is absolutely necessary in this case. As the application is not to be made to the mortgage now owned by Thatcher & Co., the plaintiffs, it is entirely indifferent to them upon which of the other debts of Massey the application is made. It would seem, therefore, unnecessary in this case to go into the questions raised as to the nature, character, and existence of the alleged Landsford debt, or to determine absolutely to which of the debts the application should be made. If the pleasure of Bryce & Co. is to be regarded, it should be made upon what is called the "Landsford debt." But we hesitate, in this incidental manner, to decide the questions which have been raised in connection with that debt, viz., whether it ever was a debt of Massey, and, if so, whether an individual or security debt, and also whether it is a subsisting debt or is barred by the statute of limitations. These questions, as they arise in this case, are purely collateral, and we would prefer to make no rulings upon them; but to reserve our

judgment, leaving it to the parties, if so advised, to have them determined, upon proper and direct issues, between themselves.

The judgment of this court is, that the judgment of the Circuit Court, with the modification herein indicated, be affirmed.